Affirmed and Memorandum Opinion filed February 1, 2011.

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-09-00764-CR

___________________

 

Juan Jose Serrato, Appellant

 

V.

 

The State of Texas, Appellee



 



 

On
Appeal from the 338th District Court

Harris County,
Texas



Trial Court Cause No. 1144276

 



 

 

MEMORANDUM OPINION

            Appellant, Juan Jose Serrato, was charged by
indictment with the felony offense of possession with intent to deliver a
controlled substance, namely, cocaine.  See Tex. Health & Safety
Code § 481.112(a), (f) (West 2010). 
The jury found appellant guilty.  It assessed punishment at twenty-five years’
confinement in the Institutional Division of the Texas Department of Criminal
Justice and a $250,000 fine.  Tex. Health & Safety Code § 481.112(f).  We affirm.

Factual and Procedural Background

On November 30, 2007, officers from the narcotics
division of the Houston Police Department (“HPD”) started surveillance on the
house located at 7829 Williford.  The police had received information that
large amounts of cocaine were being trafficked at that residence.  The police
continued the surveillance on December 1, 2007, and again on December 3, 2007.[1]

The December 3 surveillance began at approximately
1:00 p.m.  For the duration of the December 3 surveillance, the police observed
a single person enter the Williford house.  That person did not carry anything
into the house and left the house after fifteen minutes.

At 3:45 p.m. on December 3, Officer Robert Bradley, an
HPD narcotics officer and the officer in charge of the investigation, obtained
a knock-and-announce search warrant for the 7829 Williford house.  This warrant
authorized a search for “property described in the affidavit that the suspected
party, or others in control of the suspected place, are alleged to be
concealing and to have in his/her possession in violation of the laws of the
State of Texas, to wit: cocaine.”  Once Officer Bradley had obtained the search
warrant, he notified Sergeant William Rios, the HPD narcotics officer
conducting the surveillance, that the warrant had been signed.  Soon
thereafter, an entry team of five officers in raid jackets, accompanied by
additional uniformed HPD officers, entered the house.  

As the officers approached the house, they observed
two individuals in a vehicle in the driveway and an individual on the front
porch.  Two of these individuals were later identified as Gabino Ortuno and
Manuel Ortuno.  The third individual was not identified during appellant’s
trial.  Once inside the house, the officers found Magali Serrato, appellant’s
wife, and their two children in the main entrance.  Appellant was discovered in
one of the residence’s bedrooms.  The police eventually moved all of these
people into the living room of the house.

With the house cleared, the police then searched each
of the rooms in the house.  In the dining room, the police found an open
Playstation box sitting on the floor.  Inside the box was a plastic grocery bag
containing four kilogram bricks of cocaine.  In the kitchen, the police found a
small quantity of cocaine inside a microwave oven and several ounces of black
tar heroin inside the freezer.  In the bedroom where the police initially
detained appellant, the police discovered an unlocked metal lockbox under a
bed.  The lockbox held $1,450 in cash, two small .22-caliber handguns with the
chambers detached, and .22- caliber bullets.  Sitting on top of a dresser in
that same bedroom, the police found appellant’s Social Security card and a
Western Union money-transfer receipt.  The receipt indicated that appellant had
sent $200 to his grandmother.  In the second bedroom of the house, the police
found a digital scale, rubber bands, and duct tape.  All of these items were
admitted into evidence during appellant’s trial.

Andrea Robinson is the evening shift supervisor for
Harris County Pretrial Services.  She testified during appellant’s trial that
appellant, while being interviewed by a former employee of Harris County
Pretrial Services, gave 7928 Williford as his home residence.[2]  

Appellant’s wife, Magali Serrato, testified as part
of appellant’s defense.  Ms. Serrato confirmed that appellant lived at 7829
Williford on December 3, 2007.  She also explained that appellant paid half the
rent while Manuel Ortuno paid the other half.  Ms. Serrato explained that Mr.
Ortuno was her mother’s boyfriend and was also living at 7829 Williford on
December 3, 2007.  Ms. Serrato also explained that her mother had leased the
house and had previously lived there, but had left and returned to her home
country.  Ms. Serrato testified that appellant normally worked as an
electrician’s helper but he had been unemployed for about a month prior to December
3, 2007.

Ms. Serrato then turned to the events of December 3,
2007; Ms. Serrato testified that her family had departed the house in
appellant’s vehicle in the morning to shop and go for a walk.  Ms. Serrato,
while not certain as to the exact time, testified they did not return to the
house until late in the afternoon.  Ms. Serrato also testified that upon their
return to the house, they went into one of the bedrooms to eat and watch a
movie with their children.  Ms. Serrato told the jury there was a problem with
the DVD player and while appellant tried to fix the problem, she went to get
juice for the children.  At that point in time, Ms. Serrato testified she saw a
man she did not know at the time but subsequently learned was named Gabino,
walk into the house along with two other people to see Mr. Ortuno.  According
to Ms. Serrato, Gabino was carrying a closed Playstation box, which he set on
the floor between the kitchen and the dining room.  Ms. Serrato then testified
that she returned to the bedroom and a few minutes later, the police entered
the house.

Ms. Serrato asserted that her family had no knowledge
of the narcotics that the police found in the house.  However, Ms. Serrato
admitted that she was aware of the lockbox under the bed, which she said
belonged to her mother.  She claimed the $1,450 inside the lockbox belonged to
her family and constituted their savings and funds borrowed from others.  She
denied ownership of the two handguns and testified they belonged to her mother and
that her mother had left them in the house when she moved out.

The jury found appellant guilty and assessed his
punishment at twenty-five years’ confinement in the Institutional Division of
the Texas Department of Criminal Justice and a $250,000 fine.  This appeal
followed.

Discussion

Is the evidence sufficient
to support appellant’s conviction?

            Appellant asserts
three issues on appeal.  As explained below, we address them together.

            A.        The
standard of review and applicable law.

In his first issue appellant challenges the legal
sufficiency of the evidence supporting his conviction.  In his second issue
appellant asserts the trial court erred when it denied his motion for an
instructed verdict of acquittal.  Because we address a challenge to the denial
of a criminal defendant’s motion for instructed verdict as a challenge to the
legal sufficiency of the evidence, we need not address appellant’s second issue
separately from his first.  See Madden v. State, 799 S.W.2d 683,
686 (Tex. Crim. App. 1990), overruled on other grounds, Geesa v.
State, 820 S.W.2d 154 (Tex. Crim. App. 1991); Jacobs v. State, 230
S.W.3d 225, 229 n. 6 (Tex. App.—Houston [14th Dist.] 2006 no pet.).

In his third issue on appeal, appellant asserts the
evidence is factually insufficient to support his conviction.  However, because
a majority of the judges of the Texas Court of Criminal Appeals recently
determined that “the Jackson v. Virginia legal-sufficiency standard is
the only standard that a reviewing court should apply in determining whether
the evidence is sufficient to support each element of a criminal offense that
the State is required to prove beyond a reasonable doubt,” we need not
separately address appellant’s third issue.  See Brooks v. State,
323 S.W.3d 893, 894 (Tex. Crim. App. 2010) (plurality op.).[3]  In addition,
because the standard of review is the same, we do not separately refer to legal
or factual sufficiency.

In a sufficiency review, we view all the evidence in
the light most favorable to the verdict and determine whether any rational
trier of fact could have found the essential elements of the crime beyond a
reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct.
2781, 2789, 61 L. Ed. 2d 569 (1979); Salinas v. State, 163 S.W.3d 734, 737
(Tex. Crim. App. 2005).  The jury, as the sole judge of the credibility of the
witnesses, is free to believe or disbelieve all or part of a witness’
testimony.  Jones v. State, 984 S.W.2d 254, 257 (Tex. Crim. App. 1998). 
The jury may reasonably infer facts from the evidence presented, credit the
witnesses it chooses to, disbelieve any or all of the evidence or testimony
proffered, and weigh the evidence as it sees fit.  Sharp v. State, 707
S.W.2d 611, 614 (Tex. Crim. App. 1986).  Reconciliation of conflicts in the
evidence is within the jury’s discretion, and such conflicts alone will not
call for reversal if there is enough credible evidence to support a
conviction.  Losada v. State, 721 S.W.2d 305, 309 (Tex. Crim. App.
1986).  An appellate court may not re-evaluate the weight and credibility of
the evidence produced at trial and in so doing substitute its judgment for that
of the fact finder.  King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App.
2000).  Inconsistencies in the evidence are resolved in favor of the verdict.  Curry
v. State, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).  We do not engage in a
second evaluation of the weight and credibility of the evidence, but only
ensure the jury reached a rational decision.  Muniz v. State, 851 S.W.2d
238, 246 (Tex. Crim. App. 1993); Harris v. State, 164 S.W.3d 775, 784
(Tex. App.—Houston [14th Dist.] 2005, pet. ref’d).

To demonstrate possession of cocaine with intent to
deliver, the State is required to show that (1) appellant knowingly or
intentionally; (2) possessed; (3) cocaine; (4) in an amount greater than four
hundred grams; (5) with the intent to deliver the cocaine.  See Tex.
Health & Safety Code §
481.112(a), (f).  In order to prove the possession element of the offense, the
State is required to present evidence that appellant had actual care, custody,
control, or management over the contraband and that appellant knew it was
contraband.  See id. § 481.002(38) (West 2010); Deshong v. State,
625 S.W.2d 327, 329 (Tex. Crim. App. 1981); Olivarez v. State, 171
S.W.3d 283, 291 (Tex. App.—Houston [14th Dist.] 2004, no pet.).  Possession may
be proven by direct or circumstantial evidence that the accused exercised care,
control, or management over the substance knowing it was contraband.  Brown
v. State, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995).  The State must
affirmatively link the accused and the contraband from the totality of the
circumstances, demonstrating the accused’s knowledge of and control over the
contraband.  Joseph v. State, 897 S.W.2d 374, 376 (Tex. Crim. App.
1995).  An affirmative link generates a reasonable inference that the accused
knew of the contraband’s existence and exercised control over it.  Olivarez,
171 S.W.3d at 291.  The State is not required to prove exclusive possession of
the contraband for conviction.  Roberson v. State, 80 S.W.3d 730, 735
(Tex. App.—Houston [1st Dist.] 2002, pet. ref’d) (citing Harvey v. State,
487 S.W.2d 75, 77 (Tex. Crim. App. 1972)).

When the accused is not in exclusive possession of
the place where the contraband is found, then additional, independent facts and
circumstances must link the defendant to the contraband in such a way that it
can reasonably be concluded that he had knowledge of the contraband and
exercised control over it.  Id.  Texas courts have identified many
non-exhaustive factors that may help to show an affirmative link to the
contraband: (1) the defendant is present when a search is conducted; (2)
whether the contraband was in plain view; (3) the defendant’s proximity to and
the accessibility of the contraband; (4) whether the defendant was under the
influence of narcotics when arrested; (5) whether the defendant possessed other
contraband or narcotics when arrested; (6) whether the defendant made
incriminating statements when arrested; (7) whether the defendant attempted to
flee; (8) whether the defendant made furtive gestures; (9) whether there was an
odor of contraband; (10) whether the contraband was found in a place owned by
the accused or a place he had the right to possess; (11) whether the contraband
was found in an enclosed space; (12) whether the defendant possessed a large
amount of cash at the time of the arrest; (13) the amount of contraband found;
(14) whether the amount was large enough to indicate the defendant knew of its
existence; and (15) any conduct of the accused indicating consciousness of
guilt.  Olivarez, 171 S.W.3d at 291; Taylor v. State, 106 S.W.3d
827, 831 (Tex. App.—Dallas 2003, no pet.).  The number of linking factors
present is not as important as the logical force they create to prove the crime
was committed.  Olivarez, 171 S.W.3d at 291.

In a possession-with-intent-to-deliver case, the
“intent to deliver” element may be proved by circumstantial evidence, such as
the quantity of drugs possessed, the manner of packaging, and the presence of
the accused in a drug house.  Taylor, 106 S.W.3d at 831.  Further,
intent to deliver is a question of fact for the jury to resolve, and it may be
inferred from the acts, words, or conduct of the accused.  Id.

B.        Analysis.

In his appeal, appellant contends the evidence is
insufficient to support his conviction because “the State did no more than
establish [a]ppellant’s legitimate and otherwise justified presence at the
residence where the contraband was found.”

We disagree that, when viewed in the light most
favorable to the verdict, the evidence is insufficient to support appellant’s
conviction.  First, there is no dispute that appellant was an active resident
of the house where the contraband was found.  Even if there were, we conclude a
rational jury could have believed the evidence mentioned above established that
appellant resided at the Williford house.  In addition, we hold that a rational
jury could have concluded from the evidence presented by the State that
appellant was guilty beyond a reasonable doubt.  This evidence included the
police testimony that four bricks of cocaine, totaling more than 4 kilograms,
or 8.8 pounds, were found in an open box in plain view on the dining-room floor. 
The jury could also have reasonably concluded that the contraband had been
inside the house for a significant amount of time as the police conducting the
surveillance testified they did not see appellant leave the house that day and
that no one arrived at the house carrying a box.  Based on this evidence a
rational jury could have concluded that appellant was aware of its existence.  

A rational jury could also have concluded that
appellant was not an innocent bystander but instead possessed the cocaine with
the intent to distribute.  This evidence includes the large amount of cocaine
found in the house.  It also includes the fact that the presence of contraband
was not isolated to a single location in the house but was also found in two
other common areas of the house: a microwave oven and the freezer.  This
evidence includes the discovery of a large amount of cash and two handguns in
the same bedroom where appellant was initially detained as well as the
discovery of a digital scale, rubber bands, and duct tape in another bedroom. 
The evidence also included testimony that each of these items are commonly
associated with and used in drug trafficking.  A rational jury could have
concluded that, based on the evidence recounted above, appellant knowingly
possessed the four kilograms of cocaine found in the dining room with the
intent to distribute it.  Therefore, we hold the evidence is sufficient to
support appellant’s conviction.  See Moreno v. State, 195 S.W.3d 321,
326 (Tex. App.—Houston [14th Dist.] 2006, pet. ref’d) (holding that evidence that
police found 49.4 grams of heroin along with a large quantity of heroin
balloons during a search of appellant’s vehicle was sufficient to support
conviction for possession with intent to deliver); see also Porter v. State,
873 S.W.2d 729, 733 (Tex. App.—Dallas 1994, pet. ref’d) (holding evidence was
sufficient to link the defendant to cocaine found in apartment which was not
under the defendant’s exclusive control, where the defendant was found near the
cocaine, which was in plain view in apartment and no one was seen entering or
leaving the apartment immediately before the police officers entered).  Having
determined the evidence is sufficient to support the jury’s conviction of
appellant, we overrule appellant’s issues on appeal.

Conclusion

            Having overruled
appellant’s issues on appeal, we affirm the trial court’s judgment.

 

                                                                                    

                                                                        /s/        John
S. Anderson

                                                                                    Justice

 

 

 

Panel consists of Justices
Anderson, Frost, and Brown.

Do
Not Publish — Tex. R. App. P. 47.2(b).









[1] The evidence indicates
that the surveillance during that four-day period was not continuous, but only
occurred during a part of each day.





[2] Ms. Robinson was the only
witness who testified that appellant’s residence was located at 7928 Williford.





[3] Nonetheless, this does
not alter the constitutional authority of the intermediate courts of appeal to
evaluate and rule on questions of fact.  See Tex. Const. art. V, § 6(a) (“[T]he decision of [courts of
appeal] shall be conclusive on all questions of fact brought before them on
appeal or error.”)